KOBICO, INC. *vs.* GRAHAME F. PIPE & others.[1]

No. 96-P-842.

Suffolk. November 25, 1997. - December 30, 1997.

Present: BROWN, SMITH, & LAURENCE, JJ.

*Contract,* Insurance. *Insurance,* Condition precedent, Theft insurance, Misrepresentation. *Evidence,* Relevancy and materiality.

A Superior Court judge correctly construed language in an insurance policy to operate as a warranty and not as a condition precedent to recovery under the policy, and properly submitted to the jury the questions whether the plaintiff's representations in the proposal for insurance were intended to deceive or increased the insurer's risk of loss. [104-108]

At the trial of an action to recover under an insurance policy, the judge acted within his discretion to admit evidence proffered by the plaintiff relevant to the issue of increased risk of loss. [108-109]

In a civil action in which the defendants failed to object at trial to the form of the special questions to the jury, to the jury instructions, or to any inconsistency in the verdict, this court declined to view the jury's answers to the special questions as indicative of jury confusion. [109-110]

CIVIL ACTION commenced in the Superior Court Department on December 16, 1993.

The case was tried before *Charles F. Barrett,* J.

*Lawrence A. Dugan* for the defendants.

*David J. Burgess* for the plaintiff.

BROWN, J. The defendants, certain underwriters at Lloyd's, London, subscribing to policy number ZJB9204547 504, appeal from two rulings made by a Superior Court judge during the jury trial in this action to recover under an insurance policy. The first ruling concerned whether the accuracy of representations in the plaintiff's proposal for insurance constituted conditions precedent to recovery under the policy; the second involved admission of testimony for the plaintiff concerning the

[1]Pipe is named defendant on behalf of himself and all other underwriters of Lloyd's, London, subscribing to policy number ZJB9204547 504.

security of the building where the plaintiff's business was located.

The plaintiff, Kobico, Inc., is a wholesale jeweler with its place of business at the Jewelers' Exchange Building on Washington Street in downtown Boston. In August, 1992, the plaintiff purchased what is referred to as a "jewellers' block" insurance policy from the defendants to provide coverage for the plaintiff's inventory, including coverage for jewels and other stock located both on and off the plaintiff's business premises. In the plaintiff's proposal for insurance, its president, Jacob Kuperberg, made certain representations concerning, among other things, the plaintiff's record-keeping methods and inventory. Five months after the policy was issued, Kuperberg was robbed at gunpoint of over $150,000 in jewels off the business premises in Chicopee. The defendant insurers denied coverage and rescinded the policy, based on alleged misrepresentations in the proposal concerning how often the plaintiff conducted inventories, how much inventory it maintained on consignment with other jewelers, and the value of the inventory kept on its premises.

The plaintiff brought this action against the Lloyd's, London, underwriters for breach of the insurance contract and violation of G. L. c. 93A and G. L. c. 176D. It was ordered that the claims would be tried separately, and the breach of contract claim proceeded to trial. Responding to special questions, the jury found that the plaintiff's misrepresentations in the proposal were material but that there was no actual intent to deceive nor an increased risk of loss to the insurers. Final judgment was entered for the plaintiff on count one pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), and, after denial of the defendants' motion for judgment notwithstanding the verdict and for a new trial, the defendants filed this appeal.[2]

1. *Condition precedent or warranty.* Central to the plaintiff's

---

[2]There was no indication in the record that the circumstances of this case justified relief pursuant to rule 54(b), and at oral argument we questioned whether justification existed. We were told that the other count of the complaint (invoking cc. 93A and 176D) had been dismissed by mutual agreement. Papers submitted after oral argument indicated, however, that the dismissal of the noncontract count did not occur until over a year following the entry of the 54(b) judgment, after the parties' appellate briefs had been filed in this court.

Generally, it is in the plaintiff's interest, after having succeeded in a trial on a related contract count, to proceed directly to a c. 93A phase without delay. Indeed, a contract claim linked with a c. 93A or similar claim, as here, is

recovery under the insurance policy was whether the language of the policy rendered the accuracy of the plaintiff's answers on the proposal a condition precedent, or whether those answers were merely warranties, barring recovery only if the defendants proved actual intent to deceive or increased risk of loss under G. L. c. 175, § 186.[3] The defendants argue on appeal that the trial judge erred in ruling that the plaintiff's answers on the proposal operated as warranties rather than as a condition precedent.

General Laws c. 175, § 186, does not apply to provisions in an insurance policy which, by agreement of the parties, are made conditions precedent to recovery under the policy. *Krause v. Equitable Life Ins. Co.*, 333 Mass. 200, 203 (1955). Therefore, if the accuracy of the plaintiff's statements in the proposal for insurance were treated as a condition precedent, then a material

---

generally one of the most inappropriate situations for a 54(b) judgment. The parties in both the contract and the c. 93A claims are the same; the issues are overlapping; and judicial economy points to the desirability of the trial judge in the contract claim continuing to sit on the c. 93A phase of the case (and soon, while the facts and issues are still fresh in the judge's mind). The same points carry through to the appeal. There is no good reason a door should be opened for separate appeals from a contract part of the case and from a c. 93A part, where both parts raise virtually identical issues. Two appeals also have a negative impact, to say the least, on judicial economy at the appellate level.

Looking to the language of the rule, every situation in which "more than one claim for relief is presented in an action" should not lead to a 54(b) judgment. Rather, parties appealing from a 54(b) judgment must assure that the record on appeal contains an express finding by the judge that "there is·no just reason for delay." "[J]ust reason for delay" requires a showing in the record that "hardship or injustice will result" in the event the party is required to wait for all the claims to be disposed of before securing appellate review. *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. 250, 251-252 (1980). Further, there should be an inquiry as to whether "resolving the questions sought to be raised by [an] appeal will . . . simplify, shorten, or expedite the trial of any other claims still pending in the Superior Court," and the judge should be reminded to "follow the desirable practice of stating the reasons for his certification that there is no just reason for delay." *Id.* at 252-253.

With those cautionary remarks, in the interest of judicial economy, we proceed to the merits.

[3]General Laws c. 175, § 186, provides: "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

misrepresentation on the application, in and of itself, would suffice to void the policy, without necessitating additional proof under § 186. *Charles, Henry & Crowley Co.* v. *Home Ins. Co.,* 349 Mass. 723, 725 (1965) (policy language made the accuracy of the answers in an application for a jeweler's block a condition precedent to recovery).[4] See *Shaw* v. *Commercial Ins. Co.,* 359 Mass. 601, 606 (1971). The standard for determining whether an insurance policy states a condition precedent has been set forth by the Supreme Judicial Court in *Charles, Henry & Crowley Co.*:

> "[A] statement made in an application for a policy of insurance may become a condition of the policy rather than remain a warranty or representation if: (1) the statement made by the insured relates essentially to the insurer's intelligent decision to issue the policy; and (2) the statement is made a condition precedent to recovery under the policy, either by using the precise words 'condition precedent' or their equivalent."

349 Mass. at 726.

The question whether the policy language operated as a condition precedent or as a warranty was a question of law for the trial judge to resolve. *Shaw* v. *Commercial Ins. Co.,* 359 Mass. at 605. Focusing on the second prong of the *Charles, Henry & Crowley* test, the judge ruled that the insurance policy lacked the kind of emphatic language the cases require to create a condition precedent. Moreover, the judge observed that the proposal itself identified each answer as a warranty upon issuance of the policy. Finally, to the extent there was an ambiguity between the policy and the use of the term "warranty" in the proposal, the judge resolved it in the insured's favor.

Were we to view the language of the insurance policy in isolation, the question might be a close one. Paragraph 21 of the policy's "insuring conditions" states in no uncertain terms that

---

[4]In *Charles, Henry & Crowley Co.,* the insurance policy expressly provided that "[i]t is a condition of this insurance precedent to any recovery hereunder that the values of property displayed will not exceed the amount represented in answer to Question 14B of the Proposal form attached to this policy." 349 Mass. at 724. Based on the clear policy language, the court determined that the representation of the insured — that displayed jewelry would not exceed a certain value — was a condition precedent to recovery.

misrepresentations would result in a voiding of the policy.[5] Though lacking explicit use of the term "condition precedent," language of this sort has been construed as its equivalent. See, e.g., *Kravit* v. *United States Cas. Co.*, 278 Mass. 178, 179-180 (1932) (language that the policy shall be void if there was fraud, misrepresentation, or concealment concerning the insurance or claims created conditions precedent where the insured made false statements regarding prior thefts in applying for the policy); *Lopardi* v. *John Hancock Mut. Life Ins. Co.*, 289 Mass. 492, 495 (1935) (clause providing that policy "shall be void" if certain conditions existed prior to its effective date created conditions precedent); *Massachusetts Mut. Life Ins. Co.* v. *Sullivan*, 5 Mass. App. Ct. 816 (1977). See also *Edmonds* v. *United States*, 642 F.2d 877, 883 (1st Cir. 1981).

Nevertheless, even assuming par. 21 of the policy could be read to state a condition precedent, we agree with the trial judge that the express language of the proposal, which was attached to and incorporated by reference into the policy, precludes the construction urged by the defendants. The proposal form states unequivocally that the representations made therein by the prospective insured would be treated as warranties upon issuance of the policy.[6] As such, we will not attribute intent on the part of the insured to be bound to a condition precedent when the very document in which the misrepresentation occurred provided that those answers would be treated merely as warranties if a policy were issued. See generally *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers*, 411 Mass. 39, 45-46 (1991) (to determine whether the parties intended to create a condition precedent, "a court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances"). This is particularly true given the more general language of par. 21 of the policy's "insuring conditions," which made no specific reference to the answers on the proposal form.

---

[5]Paragraph 21 of the insuring conditions states: "This entire Policy shall be void if, whether before or after a loss, the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Assured therein, or in case of any fraud or false swearing by the Assured relating thereto."

[6]The proposal form provided, above the proposed insured's signature line, the following: "The signing and delivery of this proposal does not bind the proposer to complete the insurance, nor the company to issue a policy, but each answer given above shall constitute[] a warranty should a policy be issued."

Compare *Massachusetts Mut. Life Ins. Co.* v. *Sullivan*, 5 Mass. App. Ct. at 816 (undisputed that a condition precedent was created where insurance policy stated that "the Company shall incur no liability under [the] application unless . . . all answers . . . are then full, complete and true. . ."). See generally Restatement (Second) of Contracts § 203(c) (1981) ("specific terms and exact terms are given greater weight than general language"); *Lembo* v. *Waters*, 1 Mass. App. Ct. 227, 233 (1973).[7]

In light of the foregoing, the trial judge correctly construed the information in the plaintiff's proposal for insurance as a warranty rather than a condition precedent to recovery. Accordingly, questions of the plaintiff's actual intent to deceive and increase the risk of loss were properly put to the jury. See *Krause* v. *Equitable Life Ins. Co.*, 333 Mass. at 203 (plaintiff was entitled to have the jury determine whether the representation or warranty was made with actual intent to deceive or increased the risk of loss).

2. *Admission of evidence about building security*. The burden was on the defendants to establish an increased risk of loss, under G. L. c. 175, § 186, by reason of the plaintiff's misrepresentations regarding its record-keeping practices and on-premise inventory. See *Pahigian* v. *Manufacturers' Life Ins. Co.*, 349 Mass. 78, 85 (1965). To refute the defendants' claim that Kuperberg's misrepresentation of the value of on-premise inventory increased the risk of loss, the plaintiff offered the testimony of Kuperberg and of Robert Egan, the building manager at the Jewelers' Exchange Building, regarding the extensive protection afforded on those premises. The defendants claim the judge erred in admitting this evidence, which they contend was not relevant to the issue of increased risk of loss and served to mislead the jury.

During counsels' argument at sidebar, the trial judge, though initially reluctant, decided to allow the testimony, opining that it

---

[7]For additional examples of specific references creating a condition precedent, see *Lopardi* v. *John Hancock Mut. Life Ins. Co.*, 289 Mass. at 494 (condition precedent specifically identified undisclosed health problems as voiding the policy); *Charles, Henry & Crowley Co.* v. *Home Ins. Co.*, 349 Mass. at 724 (condition precedent identifying the value of property represented in answer to "Question 14B of the Proposal form"); *Edmonds* v. *United States*, 642 F.2d at 883 ("Item 7" of the policy requiring that an aircraft be operated by a pilot with certain qualifications specifically referenced in the policy exclusions).

was relevant because, assuming the plaintiff's business premises were highly secured, the jury could find that the risk of loss would not be increased merely by the insured's understating the value of the inventory kept on the premises. The defendants argue on appeal that evidence of security at the premises was not relevant because the theft took place off the premises and because the misrepresentation concerned inventory, not security measures.

Whether evidence is relevant is a question addressed to the substantial discretion of the trial judge, whose decision we will not overturn except for palpable error. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 477 (1991); *G.E.B.* v. *S.R.W.*, 422 Mass. 158, 167 (1996); *Read* v. *Mt. Tom Ski Area, Inc.*, 37 Mass. App. Ct. 901, 902 (1994). "Relevance is a broad concept, . . . and any information which tends to establish or at least shed light on an issue is relevant." *Adoption of Carla*, 416 Mass. 510, 513 (1993). See *Foreign Car Center, Inc.* v. *Salem Suede, Inc.*, 40 Mass. App. Ct. 15, 17 (1996). It is also within the judge's discretion to decide whether the probative value of the evidence outweighs the possibility that it would mislead or prejudice the jury. *Tosti* v. *Ayik*, 394 Mass. 482, 489-490 (1985). *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 714-715 (1990).

The judge acted within his discretion in deciding that evidence of security at the plaintiff's business premises was relevant to the plaintiff's defense regarding the increased risk of loss, particularly because the defendants offered evidence that the amount of on-premise inventory affected the likelihood that the insured would be targeted for theft.[8] Though additional reasons were given by the defendants for attaching significance to the matters misrepresented, the plaintiff was entitled to show the jury that having more inventory on the premises than represented in its proposal did not necessarily make the plaintiff a more attractive mark.

The defendants additionally assert, belatedly we think, that

[8]Questioned about the significance of items on the proposal regarding on-premise inventory and its relation to risk, Jonathan Cremer, a Lloyd's underwriter, testified that "it means that we know the maximum value on the premises, and we know the extent of the target that this jeweler represents to crooks." He further explained that rating the insured for purposes of setting the premium was based on "the value on the premises," in part because "it is more attractive" to theft.

the evidence of building security must have confused and misled the jury as demonstrated by the jury's answers to the special questions — that, in finding that the plaintiff's misrepresentations were material, the jury should also have found that the misrepresentation increased the risk of loss.[9] However, in charging the jury, the judge distinguished between the common law concept of materiality and the statutory concept of increased risk of loss under § 186. See, e.g., *Sullivan* v. *John Hancock Mut. Life Ins. Co.*, 342 Mass. 649, 658 (1961). Materiality, according to the judge's instructions, involved the question of whether the misrepresentation influenced the insurers' decision to issue the policy, the estimation of risk, or the determination of premium had they been informed of the correct value. This explanation accords with *Employers' Liab. Assur. Corp., Ltd.* v. *Vella*, 366 Mass. 651, 655 (1975), and, absent objection, became the law of the case. See *Bisson* v. *Eck*, 40 Mass. App. Ct. 942, 943-944 (1996).[10] As charged, the jury could have found that the plaintiff's misrepresentations were material to the insurer's own decision-making process without necessarily finding that there was an increase in the risk of loss. Hence, we decline to view the jury's answers to the special questions as indicative of jury confusion resulting from the admission of the challenged evidence.

*Judgment affirmed.*

---

[9]We note from the record on appeal that the defendants failed to object at trial to the form of the special questions, to the jury instructions, or to any inconsistency in the verdict on this point.

[10]The cases address materiality both as a common law concept and as a statutory requisite under § 186. General Laws c. 175, § 186, "leaves unchanged the common law duty upon insurance companies to show that a misrepresentation is material before an insurance policy can be avoided. The statute imposes an additional duty upon an insurance company to show an actual intent to deceive or an increase in the risk of loss." *Sullivan* v. *John Hancock Mut. Life Ins. Co.*, 342 Mass. at 658 (citation omitted). Compare *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 623 (1997) ("Section 186, applicable to all insurance policies, specifies that an insured's misrepresentation is not 'material' unless it is made with actual intent to deceive or unless it increases the risk of loss to the insurer").